**IN THE UNTIED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IMED SURGICAL, LLC, a<br>New Jersey limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>ORTHEX, LLC, a Florida limited<br>liability company; DROR PALEY, an<br>individual, ORTHOPEDIATRICS CORP., an<br>Indiana corporation, and SQUADRON<br>CAPITAL, LLC, a Connecticut limited<br>liability company,<br><br>    Defendants. | Case No.<br><br><br>**COMPLAINT** |

IMED Surgical, LLC ("IMED") sues Defendants, Orthex, LLC  ("Orthex"), Dror Paley ("Paley"), OrthoPediatrics Corp. ("OrthoPediatrics"), and Squadron Capital, LLC ("Squadron"), and states:

## **NATURE OF THE ACTION**

1.     This action arises from Paley's and Orthex' breach of non-disclosure and invention assignment obligations in a written consulting agreement under which IMED disclosed confidential information and technical information to Paley and his now dissolved company, Dror Paley LLC, which Paley secretly used to file and obtain patents and copyright registrations that he was expressly obligated to disclose and assign to IMED but which he concealed and secretly assigned to Orthex, a company, upon information and belief, in which he held an ownership interest, while consulting he was for IMED, that would compete against IMED, and which was sold in 2019 for all or some portion of $60 million dollars. This action seeks to recover, in law and

equity, ownership of the concealed intellectual property, including specifically United States Patent 10,258,377 ("the '377 patent"), and damages for breach of contract, breach of fiduciary duties, fraudulent concealment, unjust enrichment and constructive trust, and asks the Court to declare the rights of the parties in the '377 patent, related patent applications and related copyrighted computer software. IMED also requests, via separate motion, to provisionally order Orthex, OrthoPediatrics, and Squadron to maintain in trust for IMED and not convey, transfer, or to take any other action that could affect ownership during the pendency of this case, the '377 patent, related patent applications and related copyrighted computer software. The '377 patent is attached hereto as Exhibit 1.

2. The consulting agreement at issue here contains an arbitration provision. This case is based on theories of liability under the consulting agreement, including liability of an heir and successor in interest liability, and due to uncertainty whether all of the named defendants to this lawsuit can be compelled to arbitration.

## PARTIES

3. Plaintiff IMED is a limited liability company, organized and existing under the laws of the State of New Jersey.

4. IMED is owned by: WishBone ExFx, an Oklahoma limited liability company and domicile in the State of Indiana; Tamer Isin, a citizen and domicile of Turkey; and Zisan Isin, a citizen and domicile of Turkey.

5. Defendant Paley is an individual, a citizen of and domicile of the State of Florida, and who resides in Palm Beach County, Florida. Paley is an orthopedic surgeon of international reputation. Paley was the sole member of Dror Paley, LLC, a Maryland limited liability company voluntarily dissolved on May 5, 2018. ("Paley LLC").

6.     Defendant Orthex, is a Florida limited liability company with its principal place of business at 4000 Hollywood Blvd., Suite 620, Hollywood, Florida.

7.     Orthex when it was founded listed its managing member as Abraham Lavi.

8.     Abraham Lavi is domiciled in and is a citizen of the State of Florida.

9.     Orthex's current registered agent is Victor Lavi, who is domiciled in and is a resident of the State of Florida.

10.     Orthex is a citizen of the State of Florida.

11.     Orthex is currently listed on the United States Patent & Trademark Assignment database as the assignee and current owner of the '377 patent. Exhibits 2, 3.

12.     OrthoPediatrics is a Delaware corporation, with a principal place of business at 2850 Frontier Drive, Warsaw, Indiana.

13.     Orthex is a wholly-owned subsidiary of OrthoPediatrics.

14.     Squadron is a Connecticut limited liability company with its principal place of business at 18 Hartford Ave., Granby, CT 06035.

15.     Squadron's sole member is Squadron Capital Holdings LLC, which in turn is owned by four trusts. These four trusts include: (1) the JNP Parachute Mirror Trust L – Harry B. Rosenberg and Charles E. Dobrusin, Trustees; (2) the F.L.P. Trust #15M2 – Harry B. Rosenberg and Charles E. Dobrusin, Trustees; (3) the JNP 2010 – P.G. Trust – Harry B. Rosenberg and Charles E. Dobrusin, Trustees; and (4) the F.L.P. #15 M2 Parachute Trust – Harry B. Rosenberg and Charles E. Dobrusin, Trustees.

16.     Harry B. Rosenberg is domiciled in Chicago, Illinois and is therefore a citizen of Illinois.

17.     Charles E. Dobrusin is domiciled in Chicago, Illinois and is therefore a citizen of

3

Illinois.

18.     Squadron is a citizen of the State of Illinois

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332 as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

20.     Venue is proper in this Judicial District under 28 U.S.C. § 1391 because Paley and Orthex are citizens of the State of Florida and this District and Orthex has its principal place of business in this District.

21.     Venue is proper in this Judicial District under 28 U.S.C. § 1391 because OrthoPediatrics wholly owns and controls Orthex, markets and sells products and services under the '377 patent in the State of Florida and in this District.

22.     Venue is proper in this Judicial District under 28 U.S.C. § 1391 because Squadron holds a security interest in the '377 that is owned by Orthex and has registered its security interest with the Florida Secretary of State; wholly owns, operates, and controls Structure Medical, LLC of Naples, Florida; and on information and belief Structure Medical will manufacture products for Squadron pursuant to its exclusive rights under the '377 patent.

23.     This Court has personal jurisdiction over Paley and Orthex because they are both citizens of the State of Florida and of this District.

24.     This Court has personal jurisdiction over OrthoPediatrics because OrthoPediatrics wholly owns and controls Orthex, and OrthoPediatrics itself markets and sells products under the '377 patent in the State of Florida and in this District, including selling the Orthex "external fixation and hexapod system consisting of ring, struts, implants, hardware accessories, and novel

4

Point & Click Software for deformity correction in both the upper and lower extremity" and so OrthoPediatrics regularly conducts and transacts business in the State of Florida and in this District. OrthoPediatrics has purposely availed itself of the benefits and burdens of doing business in the State of Florida and in this District. As described in this Complaint, OrthoPediatrics has sufficient contacts with the State of Florida such that maintaining this suit in Florida does not offend traditional notions of fair play and substantial justice.

25.     This Court has personal jurisdiction over Squadron because Squadron holds a security interest in the '377 patent, which patent is owned by Orthex, and Squadron has registered its security interest with the Florida Secretary of State; wholly owns, operates, and controls Structure Medical, LLC of Naples, Florida; and on information and belief Structure Medical will manufacture products for Squadron pursuant to Squadron's exclusive rights under the '377 patent. Squadron regularly conducts and transacts business in the State of Florida and in this District and so has purposely availed itself of the benefits and burdens of doing business in the State of Florida and in this District. As described in this Complaint, Squadron has sufficient contacts with the State of Florida such that maintaining this suit in Florida does not offend traditional notions of fair play and substantial justice.

## INTRODUCTION

26.     This case involves surgical fixators and software used by orthopedic surgeons to re-align broken and deformed bones. A fixator is a mechanical device that is surgically attached to each of the two ends of a broken bone, which, through manual adjustment, aligns and stabilizes them so that they can be properly re-attached. A sample fixator is displayed below:



Every fixator has struts whose length are shortened or lengthened to achieve the required positional alignment. The amount by which each strut is lengthened or shortened varies from case to case, and is determined mathematically from data acquired from x-rays of the fracture.

27.     The narrow issue in this case is how a surgeon acquires data from x-rays needed to calculate proper strut length. Historically, surgeons acquired this data by visually inspecting the x-rays using manually held measuring devices.  This is a time consuming and cumbersome method.

28.     Between 2007 and 2009, a Turkish mechanical engineer named, Tamer Isin, (hereafter, "Isin") developed novel software that could both automatically acquire the required data from x-rays and, more significantly, automatically *calculate* the required strut lengths. Under Isin's method, the surgeon "pointed and clicked" a cursor on defined points of an x-ray and the software did the rest. The method was a significant improvement over the prior art.

29.     In addition to his software, Isin also developed a fixator with eight struts that he initially called an "Octopod" but later re-named the "Adam Frame." The Adam Frame in combination with Isin's software was called the "Adam Frame Computer Aided External Fixator."

30.     Isin applied for a Turkish patent on his "point and click method" in January 2011, which issued in August 2015 as Turkish Patent  TR2012 01064 B.  Isin also filed a Patent Cooperation Treaty ("PCT") application in Turkey on January 8, 2011, which published in August 2012. Isin also registered his software with the United States Copyright Office in 2010, receiving copyright registration, TXu001721872.

31.     The Patent Cooperation Treaty International Search report associated with Isin's PCT application found just a single prior art reference to Isin's PCT application, indicating that Isin's patent claims were at the time truly innovative.

32.     Isin, who moved from Turkey with his wife and children to New Jersey in 2007, sought a prominent U.S. orthopedic surgeon to help him develop, refine and commercially facilitate his "Adam Frame Computer Aided External Fixator." It was in this context that Isin met Defendant Paley in 2010. At that time, Defendant Paley was a world-renowned orthopedic surgeon practicing in Palm Beach County. In early 2010, Isin demonstrated his novel "point and click" method to Paley which resulted in Paley, through his now dissolved company, Dror Paley LLC, entering into a written consulting agreement with Isin's New Jersey company, Plaintiff, IMED Surgical, LLC. Under that consulting agreement, Paley and Dror Paley LLC promised to help IMED develop, refine and commercially facilitate the "Adam Frame Computer Aided External Fixator," which the parties re-branded as the "Adam Frame with Paley Method."

33.     As one could expect under a commercial consulting contract of this type, Paley and Paley LLC promised IMED: 1) strict confidentiality of shared trade secret and confidential information; 2) to disclose and assign any inventions and other intellectual property they developed under the consulting agreement or from the shared confidential information; and 3) to help IMED acquire in such assigned property patents, copyrights and other intellectual property rights, which Paley and Paley LLC were prohibited from pursing themselves.

34.     Paley ultimately disavowed all the promises he made to IMED. While working in a position of trust and confidence under the consulting agreement, Paley, in 2012, upon information and belief,  acquired an interest in  a competing company, Defendant, Orthex, to whom, in 2013, he assigned inventions and other intellectual property he was obligated to disclose

7

and assign to IMED under the consulting agreement. Paley, for Orthex' benefit, thereafter filed patent applications, a provisional application in 2013 and a utility application in 2014, which in 2019, ripened into United States Patent 10,258,377 entitled: "Point and Click Alignment Method for Orthopedic Surgeons, and Surgical and Clinical Accessories and Devices" (the "'377 Patent").

35.     Orthex is still the listed owner of the '377 patent.

36.      Defendant, OrthoPediatrics, with funding from Defendant, Squadron Capital, acquired Orthex in June 2019 for some portion of $60 million dollars.  Squadron Capital now holds a security interest in the '377 patent granted to it by OrthoPediatrics and/or Orthex as collateral for its loan.

37.     IMED did not learn of Paley's duplicity until after the '377 patent issued. While the consulting relationship with Paley was never formally terminated, Paley ceased performing services for IMED in Fall 2013.

38.     Isin learned of the '377 patent in June 2019, after reading an internet press release announcing  OrthoPediatrics'  purchase of Orthex and from follow up Google searches of Paley's name.

39.     Follow up investigation has revealed that Paley actively concealed his wrongdoing in multiple ways.  First, Paley and Lavi gave Orthex a written assignment of  the  '377 invention in August 2013, but they did not record that assignment with the United States Patent and Trademark Office until February 2019. Likewise, the '377 patent application, upon Paley and Lavi's request, was never published in advance of the patent's issuance, which customarily occurs eighteen (18) months after the patent application is filed.  In addition, when  Orthex was formed in Florida in 2012, only Lavi's name appeared in the publicly filed corporate formation documents.

40.     Having now uncovered Paley and Orthex' duplicity and wrongdoing, IMED now

requests this Court to order Orthex to transfer to it ownership of the '377 Patent and other intellectual property described below  to declare Squadron Capital's security interest invalid and unenforceable and to order Orthex and Paley to pay damages caused by their misconduct. For Rule 9 purposes, detailed allegations of fact follow.

## DETAILED STATEMENT OF FACTS

41.    By late 2007, Tamer Isin, independently conceived and developed an external orthopedic fixation device and related software known as the "Adam Frame Computer Aided External Fixator (hereafter, "the IMED Technology").

42.    Isin has been involved with orthopedic technology since his education in Turkey beginning in 1995 and while simultaneously working in orthopedic device sales and distribution in Sivas, Turkey. Isin learned from orthopedic physicians in Turkey immersing himself in the orthopedics industry among patients and physicians. After finishing university, Isin continued in the orthopedic material business, increasing his knowledge and experience, and it has been his profession up to the present day.

43.    In 2005, a major existing limitation for deformity correction was that then-existing measurement and calculation processes were physician dependent and resulted in each individual physician identifying a different deformity on the same x-ray image. Isin's innovative solution was developing software that would improve and refine the measurement and calculation processes to eliminate human error and inconsistency.

44.    Isin has continued developing these techniques and devices, as well as other orthopedic devices and he started IMED in September 2006. IMED is the assignee of all intellectual property rights of Tamer Isin in the IMED Technology.

45.    On or about, October 7, 2010, Isin registered his copyrights in the IMED

Technology with the United States Copyright Office, receiving registration number TXu001721872. In addition, in January 2011, Isin, as named inventor, filed a Turkish patent application, entitled "Computer-aided position identification and management methods and apparatus with vertical edge geometric alignment," which issued in August 2015 as Turkish Patent Number TR2012 01064 B. Likewise, in January 2011, Isin filed international patent application number PCT/TR2011/000034 entitled, "Computer-Assisted Position Identification and Management Method and Apparatus with Perpendicular Edge Geometric Arrangement," which published on August 2, 2012 as Patent Cooperation Treaty publication number WO 2012/102685 (hereafter, "the PCT Publication"). Exhibit 4.

46.    Tamer Isin independently conceived of, invented, and began developing the subject matter disclosed and claimed in the Turkish patent, the PCT Publication, and fixed in the U.S. Copyright Registration before meeting Paley and entering into a consulting relationship with him.

## THE RELATIONSHIP  BETWEEN IMED AND PALEY

47.    Isin contacted Paley for the first time in early 2010 proposing that they meet to discuss IMED's Technology at an upcoming trade conference in Istanbul, Turkey. At this meeting in March 2010, Isin demonstrated IMED's technology to Paley, who expressed admiration for it and offered to assist IMED refine, improve and market it as a paid consultant. Paley subsequently engaged his lawyer to draft a consulting agreement.

48.    On or about August 23, 2010, IMED, Paley and Paley LLC, entered into the Consulting Agreement attached as Exhibit 5.  Paley is individually bound by the Consulting Agreement  both as a party and in any event, pursuant to paragraph 11 thereof as Paley LLC's legal representative.

49.    Under the terms of the Consulting Agreement, IMED engaged Paley and Paley

LLC, to assist IMED in the research and development of the IMED Technology, as well as assist in the marketing and sales strategies for the IMED Technology. Specifically, per Exhibit B to the Consulting Agreement, Paley and Paley LLC were to provide the following services:

    a.  Assist IMED in the discovery, research and development and production of the IMED Technology;

    b.  Assist IMED in the development of marketing and sales strategies of the IMED Technology; and

    c.  Assist IMED in educating its salesmen, distributors and/or medical personnel about the IMED Technology

50.    IMED contracted Paley for these services because Paley had expert knowledge in the field of orthopedic alignment and repair, was in need of Paley's knowledge and expertise to develop and market the IMED Technology and was therefore dependent on Paley to fully understand the value of the IMED Technology to orthopedic practitioners, how best to refine and enhance the IMED Technology and how best to sell it in the applicable market. By reason of Paley's superior knowledge and experience, IMED's dependence and reliance on same and Paley's promises to IMED, as outlined below, of trust and confidentiality, Paley was IMED's fiduciary and as such, owed fiduciary duties to IMED.

51.    The following provisions of the Consulting Agreement are particularly material to this lawsuit.

52.    Pursuant to Section 2.1 of the Consulting Agreement, either IMED or Paley LLC could terminate the Agreement at any time without cause by giving not less than sixty (60) business days' prior written notice to the other party, such termination being effective after the terminating party sent notice of termination to the other party by Certified Mail, Return Receipt Requested.

53.     Paley LLC and Paley, individually, covenanted and agreed under Section 5.4 of the Consulting Agreement to treat as confidential and not to use or disclose any IMED Confidential Information  for a period of three (3) years following the termination of the Consulting Agreement. The confidentiality restrictions were therefore independent of, and not dependent upon IMED's performance of any other covenants in the agreement.

54.     Confidential Information is defined in Section 5.3 of the Consulting Agreement as any information or material which is not generally available to or used by others, including, but not limited to, strategic, scientific, legal and financial information of IMED, whether or not the underlying details are in the public domain.

55.     Under the terms of Section 5.5 of the Consulting Agreement, all Trade Secrets and Confidential Information that may be disclosed to, or come into Paley's possession, shall be and remain the sole and exclusive property of IMED.

56.     In addition, under Section 5.5 of the Consulting Agreement, Paley agreed that upon termination of the Agreement, Paley would promptly deliver to IMED the originals and all copies of Trade Secrets and Confidential Information in Paley's possession and would further delete any such files in Paley's personal computer and certify such deletion to IMED.

57.     Under Section 6 of the Consulting Agreement, titled "Inventions," there appears section 6.1, which states, "The terms and provisions of this Section 6 shall apply only to Inventions (as hereinafter defined) which Consultant makes, develops, invents, first reduces to practice, conceives, creates, or authors, either solely or jointly with others, during the course of Consultant providing services to the Company, or with the use of the Company's Trade Secrets, material, facilities, employees or advisors."

58.     Pursuant to Section 6.2 of the Consulting Agreement, Paley assigned to IMED all

of Paley's worldwide rights, titles and interests to inventions, improvements, discoveries, processes, designs, technical information, know-how, data, specifications, Trade Secrets, patents, trademarks, copyrights, computer programs, and other proprietary information relating to the development, production, distribution and licensing of computer aided external fixator devices ("Inventions"), which Paley conceived, invented, or developed during the term of the Agreement, or with the use of the IMED's Trade Secrets, material, facilities, employees or advisors.

59. Section 6.3 of the Consulting Agreement provides that Paley was required to disclose any Inventions to IMED and to execute and deliver all documents, including applications for patents and copyrights, and to perform such acts during or after the term of the Agreement to obtain and enforce patents, copyrights, Trade Secrets and other proprietary and intellectual property rights, in respect of the Inventions and to vest title to such Inventions and to all associated intellectual property rights in IMED.

60. Section 6.3 of the Agreement further provides that Paley shall not independently apply for any letters patent, copyright, trademarks, or mask rights or other form of protection with respect to any Invention.

61. Pursuant to Section 6.4 of the Agreement, an Invention qualifying for protection under the copyright laws of the United States and qualifying as a "work made for hire" shall be "works made for hire" under such copyright laws, and shall be the sole and exclusive property of IMED.

62. According to Section 6.4 of the Consulting Agreement, "Consultant hereby irrevocably appoints the Company, both during and after Consultant's retention by the Company, to be Consultant's attorney in Consultant's name and on Consultant's behalf to execute any and all such instruments and documents and to do all such things and generally use Consultant's name

for the purpose of assuring to the Company (or its designee) the full benefit of the provisions of this Section 6." By reason of this paragraph, IMED renamed the "Adam Frame Computer Aided External Fixator" the "Adam Frame with Paley Method," for which IMED received a U.S. trademark registration on May 17, 2011.

63.     Section 11 of the Consulting Agreement, entitled "Binding Agreement," states, "The rights and obligations of the Company under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Company. This Agreement is a personal service agreement and may not be assigned in whole or in part by Consultant. The covenants of Consultant contained in Sections 5, 6 and 7 shall be binding upon the heirs and legal representatives of Consultant."

64.     Section 16 to the Consulting Agreement, is entitled "Governing Law and Jurisdiction," and states, "shall be governed by and interpreted under the Laws of the State of New Jersey, without giving effect to the principles of conflicts of law of any jurisdiction." Section 16 also contains an arbitration clause, a meet and confer requirement, and provision that the parties to the agreement submit to final binding arbitration.

65.     Following execution of the Consulting Agreement, IMED disclosed Confidential and Trade Secret information to Paley about the  design, manufacture and functionality of the IMED Technology.  Based on this information, Paley, suggested improvements to the IMED Technology, including the suggestion that the IMED Technology allow orthopedic physicians to align fracture repairs not just among pieces of broken bone but also with respect to other anatomical parts of the body.

66.     In addition to suggesting improvements, Paley also began demonstrating the  IMED Technology at trade shows. Paley did this at the 2010 A.S.A.M.I. International 3rd World Congress

14

on External Fixation 20 - 22 in Barcelona, Spain,  the 2011 AAOS Meeting in San Diego, California, the 2012 World External Fixator Congress in Bahia, Brazil, and the 2013 Annual Meeting of the American Academy of Orthopedic Surgeons in Chicago, Illinois.

67.     Paley continued performing services for IMED under the Consulting Agreement through late 2013, at which time IMED fell in arrears. Owed money, Paley halted services and walked away, albeit without a formal termination under Section 2.1 of the Consulting Agreement. There was no further contact between Paley and IMED after this point in time. IMED went dormant and Isin returned to Turkey with his family.

68.     Paley next appeared on Isin's radar in July 2019.  At that time, Isin read an internet news release about OrthoPediatrics' acquisition of Orthex and Orthex' having a U.S. patent on a computer-aided external fixator device. After doing further research, Isin discovered that Paley on September 27, 2013 applied for and was later granted the '377 patent, titled "Point and Click Alignment Method for Orthopedic Surgeons, and Surgical and Clinical Accessories and Devices," that claims a point and click method to implement intended manipulation of an external fixator frame by an orthopedic professional.

69.     During the term of the Agreement, Paley had access to the IMED Technology and know-how as communicated to him by Isin. On information and belief, Paley misappropriated this Confidential Information and know-how to copy and/or duplicate the constituent elements of the IMED Technology, including, but not limited to, the specialized apparatus developed by IMED, the use of software for downloading, analyzing, and measuring corrections to deformities. The software as developed by Isin including point and click technology, the associated algorithms, interfaces, as well as software-driven measurement and correction methods that form a substantial part of the Alleged Paley Method.

70.     On information and belief, Paley by keeping these Inventions secret and not disclosing them to IMED in writing, breached the Consulting Agreement.

71.     On information and belief, Paley by keeping these Inventions secret and failing to assign them to IMED, breached the Consulting Agreement.

72.     On information and belief, Paley by using IMED's confidential and technical information, including the IMED Technology, breached the Consulting Agreement to create substantially similar subject matter claimed in the '377 patent and associated computer software.

73.     The subject matter claimed in the '377 patent qualifies as an Invention that under the Consulting Agreement must be assigned to IMED and is the property of IMED.

74.     The software developed in connection with the Paley Method is an Invention that qualifies for protection under the U.S. copyright laws and qualifies as a "work made for hire" and under the Consulting Agreement must be assigned to IMED and is the property of IMED.

## PALEY'S CLANDESTINE ACTIVITIES

75.     At no time prior to July 2019 was IMED or Tamer Isin aware of, or reasonably could have discovered, that Paley used IMED's Confidential Information to file and obtain a U.S. patent while providing services to IMED under the Agreement.

76.     Upon information and belief, on or about October 31, 2012, Paley acquired an ownership interest in Orthex.

77.     Orthex was a continuation of the business and interests of Dror Paley, LLC because it was active in the same business of orthopedic external fixator devices for correcting bone deformities. Orthex from its start was engaged in this business including, but not limited to, acquiring ownership of the '377 patent, and patent applications that claim priority to the patent application that issued as the '377, and associated computer software to engage in the business of

orthopedic external fixator devices for correcting bone deformities.

78.     On information and belief, Paley helped start Orthex to evade the requirements of the Consulting Agreement and to do what Paley LLC could not do: develop, market, and sell medical apparatus and instruments developed from confidential information imparted to Paley under the Consulting Agreement. As such, Orthex is the successor in interest to Dror Paley, LLC.

79.     On December 11, 2012, Orthex filed an Intent to Use trademark application with the United States Patent & Trademark Office, for the word mark "Orthex," serial number 85799899, and registration number 5041346. This application states that the word mark is for goods and services as, "Medical apparatus and instruments for use in orthopedic surgery." Exhibit 6.

80.     On December 11, 2012, Orthex filed an Intent to Use trademark application with the United States Patent & Trademark Office, for a stylized word mark "Orthex" inside a rectangular box, application serial number 85800011. This application states that the stylized mark is for goods and services, "Medical apparatus and instruments for use in orthopedic surgery; bone implants composed of artificial materials; medical instruments and devices, namely, external fixators." Exhibit 7.

81.     On August 21, 2013, Paley executed an assignment of his rights in a patent application to Orthex that was at that time "in final preparation with imminent filing date," as shown by the assignment records of the United States Patent & Trademark Office.  The title of the imminently to be applied for patent application was listed as, "Point and Click Bone Alignment Method for Orthopedic Surgeons and Surgical and Clinical Accessories and Devices."  This assignment is attached as Exhibit 3, at 2-5.  While executed in August 2013, the assignment was not recorded with the United States Patent and Trademark Office until February 22, 2019.

82.     Upon filing the patent application that eventually issued as the '377 patent, Paley, through his then-patent counsel, requested that the patent application not be published eighteen (18) months after filing, as is standard for all patent applications filed at the United States Patent & Trademark Office since November 29, 2000, but instead specifically requested that the application be held in secrecy. The '377 patent issued on April 16, 2019, having been held in secrecy by the United States Patent & Trademark Office until that time.

83.     On information and belief, Paley helped start Orthex to compete in the same business space as IMED, namely medical apparatus and instruments for use in orthopedic surgery; bone implants composed of artificial materials; medical instruments and devices, namely, external fixators, while consulting for IMED under the 2010 Consulting Agreement.

84.     Paley never informed IMED or Tamer Isin of the existence of Orthex, the applied-for patent, applied-for trademarks, applied-for copyrights or Paley's involvement with any of the above activities with Orthex.

85.     Neither IMED nor Tamer Isin learned of the existence of Orthex, or that Paley had filed the patent application that issued as the '377 patent until years later in July 2019.

86.     On information and belief, Paley actively concealed the fact that he took confidential and technical information and know how he learned from Isin and IMED, and without informing Isin and IMED, Paley found separate patent counsel and filed a patent application in the United States Patent & Trademark Office that disclosed and claimed a point and click method of correcting bone deformities based largely, if not entirely, on the IMED Technology that Paley learned from Isin and IMED.

87.     On information and belief, Paley and his partner in Orthex,  Abraham Lavi, sought a copyright registration from the United States Copyright Office to cover a work that Paley

substantially, if not completely, learned and copied from the IMED Technology, point and click method. This includes, but is not limited to, the program's interface, appearance, environment, functionality, and user experience.

88.     Paley through his activities and due to his sole ownership of and control over Paley LLC, caused Paley LLC to breach the Consulting Agreement. Paley knew of the obligations and duties existing in the Consulting Agreement, and that he was personally bound by those duties and obligations. Paley had knowledge that failure of either he or Paley LLC to perform the duties and obligations of the Consulting Agreement referenced herein would materially breach the Consulting Agreement.

89.     Based on Paley's conduct breaching the Consulting Agreement, Orthex gained possession of knowledge and technology via Paley that Orthex never would have but for Paley's conduct.

90.     Paley assigned the '377 patent to Orthex knowing it was in violation of the Consulting Agreement.

91.     At no time prior to April 2019 was IMED aware of, or reasonably could have discovered, that Paley had developed software relating to the Paley Device, or registered a United States copyright for such software during the period Paley was providing services to IMED under the Agreement. On information and belief, Paley actively concealed his efforts concerning the subject matter claimed in the '377 patent and associated software.

92.     On information and belief, OrthoPediatrics Corp. purchased Orthex and all its assets including certain rights in its intellectual property for approximately $60 million. On further information and belief, OrthoPediatrics Corp. purchased Orthex largely due to the promise and value of Orthex' Hexapod system's key advantages namely the patented point and click

technology, which dramatically simplifies deformity correction planning.

93.     On information and belief, this alleged patented point and click technology purchased by OrthoPediatrics Corp. consists of technology that are inventions and/or works made for hire that Paley was obligated under the Consulting Agreement to assign to IMED.

94.     On information and belief, Orthex through OrthoPediatrics Corp. currently markets and sells a hexapod external fixator system with a patented Point and Click technology, that is claimed in the '377 patent. Prior to Orthex being purchased by OrthoPediatrics Corp., Orthex was earning millions of dollars marketing and selling this system. Paley, as an owner of Orthex, directly benefited from these sales.

95.     On information and belief, Paley currently uses the Orthex hexapod external fixator system with the patented Point and Click technology, that is claimed in the '377 patent, in his orthopedics practice on a regular basis.

## ORTHOPEDIATRICS ACQUIRES ORTHEX USING FINANCINING FROM SQUADRON

96.     OrthoPediatrics purchased Orthex and all its assets including its intellectual property. This purchase was announced at least on the OrthoPediatrics corporate website on June 5, 2019 and as carried on Global Newswire. Exhibit 8.

97.     OrthoPediatrics announced in its press release that it had "[a]cquired Vilex in Tennessee, Inc. ("Vilex") and Orthex, LLC (collectively, "Vilex"), including its Orthex Hexapod circular fixation technology and proprietary CORA-based x-ray planning software, for a total of $60 million, consisting of $50 million in cash and $10 million in stock. The transaction will be financed, in part, with $30 million of new debt provided by Squadron on similar terms to the other debt it has provided OrthoPediatrics."

98.     Squadron owns 5,376,764 shares of OrthoPediatrics and has an option to acquire

additional shares.  Squadron is the largest single owner of OrthoPediatrics.  It also has installed 4 of OrthoPediatrics' directors and has the right to install more in accordance with its ownership interest.

99.     There exists no indication of change of ownership of the '377 patent on the publicly available United States Patent & Trademark Office Assignment database, which as of the filing of this complaint shows Orthex as the assignee of the '377 patent. The public record at the United States Patent & Trademark Office is inconsistent with: (i) OrthoPediatrics' public statements concerning its purchase of Orthex and its intellectual property, and (ii) the contents of the publicly available portions of the Purchase Agreement between OrthoPediatrics and Orthex, and therefore necessitates OrthoPediatrics being named a Defendant in this lawsuit that seeks provisional relief to preserve and protect the '377 patent, patent applications that claim priority to the application that issued as the '377 patent, and associated computer software, until the ownership questions are settled.

100.     Squadron's transaction with OrthoPediatrics included transfer of exclusive rights from Orthex and OrthoPediatrics to Squadron for use in the adult segment of external fixation under the '377 patent. On information and belief, these exclusive field of use rights were transferred from Orthex and OrthoPediatrics to Squadron in exchange for Squadron forgiving approximately $25 million of the loaned transaction amount to OrthoPediatrics for the purchase of Orthex.

101.     Recorded on the publicly available United States Patent & Trademark Office Assignment database is a document showing Squadron's security interest in the '377 patent and patent applications that claim priority to the patent application that issued as the '377 patent. Exhibits 2, 9.

102.    The document recorded at the United States Patent & Trademark Office indicates that Squadron is the "Lender," that Orthex and OrthoPediatrics are collectively, "Borrowers," and pursuant to a loan agreement, Orthex, on information and belief as "Grantor," created a security interest to Lender in intellectual property including but not limited to the '377 patent and patent applications that claim priority to the patent application that issued as the '377 patent.

103.    Squadron in January 2012 acquired and wholly owns, operates, and controls Structure Medical, LLC of Naples, Florida.

104.    Structure Medical, LLC's headquarters exist in Naples, Florida. Structure Medical, LLC also operates and maintains production facilities in Naples, Florida.

105.    Structure Medical is a contract manufacturer of orthopedic and spinal implants, orthopedic instrumentation, arthroscopic devices, and cutting tools.

106.    On information and belief, Structure Medical will manufacture products for Squadron pursuant to its exclusive rights under the '377 patent.

107.    OrthoPediatrics announced when it purchased Orthex that the "Orthex Hexapod technology is its most rapidly growing system, reaching sales of $3.1 million in 2018, increasing more than 50% year-over-year since receiving FDA clearance in March 2016."

108.    On information and belief, OrthoPediatrics currently derives a revenue stream from Orthex by its marketing and sale of products under the '377 patent including, but not limited to, external fixation and hexapod systems consisting of ring, struts, implants, hardware accessories, and the claimed novel Point & Click Software for deformity correction in Florida and in this District.

109.    On information and belief, Paley currently derives a revenue stream by marketing, selling, and using products under the '377 patent including, but not limited to, external fixation

and hexapod systems consisting of ring, struts, implants, hardware accessories, and the claimed novel Point & Click Software for deformity correction, at his clinic, the Paley Institute, in West Palm Beach, Florida.

110.    The OrthoPediatrics press announcement further states, the Orthex Hexapod system's "key advantages is the patented point and click software, which dramatically simplifies deformity correction planning. This software was developed by Abraham Lavi, PhD[sic], founder of Vilex, in conjunction with Dr. Dror Paley, founder of the Paley Institute of West Palm Beach, Florida."

111.    OrthoPediatrics' August 2019 10-Q filing with the United States Security and Exchange Commission (hereafter, "SEC") identified amortization of intangible assets resulting from the acquisition of Orthex and Vilex, including patents, licenses, and the value of internally developed software. Exhibit 10.

112.    OrthoPediatrics on June 5, 2019, filed an SEC form 8-k disclosing "On June 4, 2019, OrthoPediatrics Corp. (the "Company") entered into an Equity Interest Purchase Agreement (the "Purchase Agreement") with the stockholders of Vilex in Tennessee, Inc., a Tennessee corporation ("Vilex"), and the members of Orthex, LLC, a Florida limited liability company ("Orthex"), providing for the purchase by the Company of all of the issued and outstanding shares of stock of Vilex and all of the issued and outstanding units of membership interests in Orthex (the "Acquisition") from such stockholders and members, respectively (collectively, the "Sellers")." Exhibit 11.

113.    The Purchase Agreement identifies OrthoPediatrics Corp., as Purchaser and the Sellers Representative as Abraham Lavi. Exhibit 12.

114.    Section 2.14(a) of the Purchase Agreement states, "Schedule 2.14(c) sets forth a

true and complete list, as of the date hereof, of each of the following items of Intellectual Property

of the Companies, and sets forth whether such Intellectual Property is owned or licensed, and the

owner, licensor, and licensee, as applicable, of such Intellectual Property: trade names, trademarks,

service marks, trade dress, and logos, whether or not registered, and all registrations of and

applications therefor; registered copyrights and applications therefor; patents and applications

therefor; domain names and registrations thereof; and social media accounts."

115.    On information and belief, certain details and contents of Schedule 2.14(c) are

confidential to the parties to the Purchase Agreement.

**COUNT I – PALEY'S AND ORTHEX'**
**BREACH OF THE CONSULTING AGREEMENT**

116.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1

through 115 above as though fully stated herein.

117.    The Consulting Agreement is a valid contract existing between IMED, Paley and

Dror Paley, LLC.

118.    The Consulting Agreement was executed on behalf of IMED by Tamer Isin.

119.    Dror Paley executed the Consulting Agreement on behalf of himself and Dror

Paley, LLC.

120.    Even if not a party, Dror Paley, individually, as the sole legal representative of Dror

Paley, LLC, is bound by at least paragraphs 5, 6, and 7 of the Consulting Agreement by reason of

paragraph 11 thereof.

121.    Orthex, as a successor to Paley LLC, which, upon information and belief, Paley

helped create while in a relationship of trust and confidence with IMED to engage in conduct

which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's

"heir," and is therefore, by reason of paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof.

122.   Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable based on acts undertaken by Paley on behalf of Orthex.

123.   Paley and Orthex breached the Consulting Agreement by at least:

    a.   Failing to treat as confidential and not to use or disclose any Confidential Information of IMED for a period of three (3) years following the termination of the Consulting Agreement in violation of Consulting Agreement Section 5.4;

    b.   Disclosing confidential information Paley learned under the Consulting Agreement to third parties including but not limited to Abraham Lavi, Orthex, LLC, and his patent prosecution attorney in violation of Consulting Agreement Section 5.4;

    c.   Failing to assign to IMED any Inventions under the Consulting Agreement, including but not limited to the patent application that lead to the '377 patent and the related computer software in violation of Consulting Agreement Section 6.2;

    d.   Failing to disclose any Inventions to IMED and to execute and deliver all documents, including applications for patents and copyrights, and to perform such acts during or after the term of the Agreement to obtain and enforce patents, copyrights, Trade Secrets and other proprietary and intellectual property rights, in respect of the Inventions and to vest title to such Inventions and to all associated intellectual property rights in IMED in violation of Consulting Agreement Section 6.3;

e.  Independently applying for letters patent, copyright, trademarks, or mask rights or other form of protection with respect to any Invention in violation of Section 6.3 of the Consulting Agreement;

f.  Hiding from IMED computer software works made for hire based on confidential information Paley learned from Tamer Isin and IMED while Paley was performing under the Consulting Agreement and prior to termination of the Consulting Agreement and that were the property of IMED in violation of Consulting Agreement Section 6.4; and

g.  Disclosing to Orthex, LLC and Abraham Lavi technical and Confidential Information Paley learned from Tamer Isin and IMED while he was performing under the Consulting Agreement and  before three (3) years after termination of the Consulting Agreement in violation of Consulting Agreement Section 5.4.

124.   The above breaches by Paley were material breaches because they denied IMED the entire benefit of the Consulting Agreement, caused IMED a forfeiture of its rights in the IMED Technology and valuable transfer of the '377 patent and associated computer software.

125.   These breaches by Paley and Orthex proximately caused damage to IMED in an amount exceeding $75,000.

**<u>COUNT II – PALEY'S AND ORTHEX' BREACH OF FIDUCIARY DUTIES</u>**

126.   Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 115 above as though fully stated herein.

127.   The Consulting Agreement was a valid contract existing between IMED, Paley and Dror Paley, LLC.

128.   The Consulting Agreement was executed on behalf of IMED by Tamer Isin.

129.    Dror Paley executed the  Consulting Agreement  on behalf of himself and Dror Paley, LLC.

130.    Even if Dror Paley is not a party to the Consulting Agreement, Dror Paley, individually, was the sole legal representative of Dror Paley, LLC and is bound by at least paragraphs 5, 6, and 7 of the Consulting Agreement under  paragraph 11 thereof.

131.     By reason of Paley's duties under paragraphs 5, 6 and 7 of the Consulting Agreement, the services he was to perform for IMED, his superior knowledge of the matters that he agreed to give advice on and IMED's dependence and reliance on same, Paley was in a relationship of trust and confidence with IMED, and thus IMED's fiduciary.

132.    Orthex, as a successor to Paley LLC, which, upon information and belief, Paley helped create  while in a relationship of trust and confidence with IMED to engage in conduct which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's "heir," and is therefore, under paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof. By reason of Orthex' duties under paragraphs 5, 6 and 7 of the Consulting Agreement, Orthex was in a relationship of trust and confidence with IMED.

133.    Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable based on acts undertaken by Paley on behalf of Orthex, and/or aided and abetted  Paley in his breach of fiduciary duties to IMED.

134.    Under the Consulting Agreement, and as described fully above, fiduciary duties existed from Paley and Orthex to IMED, including a duty of  loyalty and a duty to fully and timely disclose all material information, including the disclosure of information that they were expressly required to disclose to IMED under the Consulting Agreement.

135.    Paley and Orthex breached their fiduciary duties to IMED by:  self-dealing and then

using for their own benefit and to the exclusion of IMED, IMED's confidential and technical information that Paley learned from Tamer Isin and IMED to, among other things file a patent application that lead to the '377 patent that they kept hidden from IMED as well as keeping hidden associated computer software, starting Orthex in secret to compete with IMED and which did compete with IMED, Paley assigned the '377 patent to Orthex, LLC, and as a result Paley and Orthex profited from the breach of their fiduciary duties to IMED, to the detriment and exclusion of IMED as further described in detail above.

136.    On information and belief, Paley and Orthex intentionally and willfully breached their fiduciary duties to IMED, as described in the preceding paragraphs, with full knowledge and willful disregard of their duties and obligations to IMED.

137.    Paley's and Orthex' breach of their fiduciary duties to IMED proximately caused damages to IMED in an amount exceeding $75,000.

## <u>COUNT III – FRAUDULENT CONCEALMENT BY PALEY AND ORTHEX</u>

138.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 115 above as though fully stated herein.

139.    The Consulting Agreement was a valid contract existing between IMED, Paley and Dror Paley, LLC.

140.    The Consulting Agreement was executed on behalf of IMED by Tamer Isin.

141.     Paley executed the Consulting Agreement on behalf of himself and Dror Paley LLC.

142.    Even if not a party to the Consulting Agreement, Dror Paley, individually, was the sole legal representative of Dror Paley, LLC and is bound by at least paragraphs 5, 6, and 7 of the Consulting Agreement under paragraph 11 thereof.

143.    By reason of Paley's duties under paragraphs 5, 6 and 7 of the Consulting Agreement, the services he was to perform for IMED, his superior knowledge of the matters that he agreed to give advice on and IMED's dependence and reliance on same, Paley was in a relationship of trust and confidence with IMED.

144.    Orthex, as a successor to Paley LLC, which, upon information and belief, Paley helped create while in a relationship of trust and confidence with IMED to engage in conduct which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's "heir," and is therefore, under paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof. By reason of Orthex' duties under paragraphs 5, 6 and 7 of the Consulting Agreement, Orthex was in a relationship of trust and confidence with IMED, and thus IMED's fiduciary.

145.    Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable based on acts undertaken by Paley on behalf of Orthex, and/or aided and abetted  Paley in his breach of fiduciary duties to IMED.

146.    By being in a relationship of trust and confidence with IMED, Orthex and Paley owed fiduciary duties to IMED, including duties of loyalty and the duty to fully and timely disclose all material information, including the disclosure of information that they were expressly required disclose to IMED under the Consulting Agreement.

147.    Paley and Orthex, as fiduciaries of IMED, in violation of their duties of loyalty and disclosure, knowingly and intentionally concealed  material information from  IMED by, among things: 1) failing to disclose Inventions which were assigned or assignable to IMED under the Consulting Agreement, including the patent application that lead to the '377 patent and associated computer software; 2) failing to disclose that Paley had assigned to Orthex Inventions that were

29

assigned or assignable to IMED under the Consulting Agreement; 3) failing to disclose that Paley and Orthex used Confidential and or Trade Secret information for their self-benefit, which they were precluded from so using or disclosing under the Consulting Agreement; 4) failing to disclose that Paley and Orthex had filed patent applications on Inventions assigned or assignable to IMED under the Consulting Agreement, which Paley and Orthex were prohibited thereunder from filing themselves, including the patent application that lead to the '377 patent; and 5) by failing to disclose to IMED that Orthex and Paley actively concealed their wrongdoing by forming Orthex without the inclusion of Paley's name on publicly available corporate formation documents; concealing Paley's 2013 written patent assignment to Orthex by not recording it with the United States Patent and Trademark Office until 2019 and by asking the United States Patent Office to not publish the '377 patent application prior to patent issuance.

148.    On information and belief, Paley and Orthex knowingly and intentionally concealed the aforesaid material Information from IMED with the intent to cause IMED's reliance thereon; that is Paley and Orthex intended to and did in fact cause IMED's reliance on the concealment of the aforesaid material information by causing IMED to misapprehend Paley and Paley LLC's compliance with paragraphs 5, 6 and 7 of the Consulting Agreement and in doing so, causing them to forbear from asserting its rights and remedies against them for breaching paragraphs 5 and 6 of the Consulting Agreement.

149.    By concealing material information from IMED and inducing IMED's reliance thereon, Paley and Orthex caused IMED to suffer more than $75,000 in damages by being denied the benefits of the Consulting Agreement, specifically, ownership of the '377 patent and associated software and the involuntary forfeiture of the value therein, including that portion of the $60 million received by Paley for his sale of his ownership in Orthex.

## COUNT IV – UNJUST ENRICHMENT BY PALEY AND ORTHEX

150.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 115 above as though fully stated herein.

151.    The Consulting Agreement was a valid contract existing between IMED, Paley and Dror Paley, LLC.

152.    The Consulting Agreement was executed on behalf of IMED by Tamer Isin.

153.    Paley executed the Consulting Agreement on behalf of himself and Dror Paley LLC.

154.    Even if not a party to the Consulting Agreement, Dror Paley, individually, was the sole legal representative of Dror Paley, LLC and is bound by at least paragraphs 5, 6, and 7 of the Consulting Agreement under paragraph 11 thereof.

155.    By reason of Paley's duties under paragraphs 5, 6 and 7 of the Consulting Agreement, the services he was to perform for IMED, his superior knowledge of the matters that he agreed to give advice on and IMED's dependence and reliance on same, Paley was in a relationship of trust and confidence with IMED, and thus IMED's fiduciary.

156.    Orthex, as a successor to Paley LLC, which, upon information and belief, Paley helped create while in a relationship of trust and confidence with IMED to engage in conduct which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's "heir," and is therefore, under paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof. By reason of Orthex' duties under paragraphs 5, 6 and 7 of the Consulting Agreement, Orthex was in a relationship of trust and confidence with IMED.

157.    Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable

based on acts undertaken by Paley on behalf of Orthex, and/or aided and abetted  Paley in his breach of fiduciary duties to IMED.

158.    On information and belief, Paley is a named inventor on the patent application that lead to the '377 patent and which is based on information Paley learned from IMED. IMED conferred the benefit of knowledge of the IMED Technology on Paley because the '377 patent is based at least partially, if not in largely, on information Paley learned from IMED and Tamer Isin.

159.    Paley assigned the patent application that lead to the '377 patent to Orthex in August 2013. Orthex is identified as the current owner of the '377 patent on the publicly accessible United States Patent & Trademark Office Assignment Database. Orthex received the benefit of the intellectual property that is patent application that lead to the '377 patent from IMED.

160.    Paley received the benefit of the grant of the '377 patent to him, and which later formed a primary basis for the acquisition of Orthex by OrthoPediatrics Corp. for approximately $60 million.

161.    Paley retaining any part of the $60 million is inequitable because Paley received that money based on information and technology he learned from IMED, which Paley absconded with in breach of his duties under the Consulting Agreement.

162.    Orthex retaining ownership of the '377 patent, and any related patent applications that claim priority to the '377, or any rights in computer software associated with the subject matter claimed in the '377 patent, is inequitable because it is based on information and technology Paley learned from IMED and Tamer Isin with which Paley absconded in breach of his duties under the Consulting Agreement.

163.    Paley has been unjustly enriched to the detriment of IMED and has damaged IMED in an amount exceeding $75,000.

164.   Orthex has been unjustly enriched to the detriment of IMED and has damaged IMED in an amount exceeding $75,000.

## COUNT V – ACCOUNTING AGAINST PALEY AND ORTHEX

165.   Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 115 above as though fully stated herein.

166.   The Consulting Agreement was a valid contract existing between IMED, Paley and Dror Paley, LLC.

167.   The Consulting Agreement was executed on behalf of IMED by Tamer Isin.

168.    Paley executed the Consulting Agreement on behalf of himself and Dror Paley LLC.

169.   Even if not a party to the Consulting Agreement, Dror Paley, individually, was the sole legal representative of Dror Paley, LLC and is bound by at least paragraphs 5, 6, and 7 of the Consulting Agreement under paragraph 11 thereof.

170.   By reason of Paley's duties under paragraphs 5, 6 and 7 of the Consulting Agreement, the services he was to perform for IMED, his superior knowledge of the matters that he agreed to give advice on and IMED's dependence and reliance on same, Paley was in a relationship of trust and confidence with IMED, and thus IMED's fiduciary.

171.   Orthex, as a successor to Paley LLC, which, upon information and belief, Paley helped create while in a relationship of trust and confidence with IMED to engage in conduct which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's "heir," and is therefore, under paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof. By reason of Orthex' duties under paragraphs 5, 6 and 7 of the Consulting Agreement, Orthex was in a relationship of trust and confidence with IMED.

172.     Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable based on acts undertaken by Paley on behalf of Orthex, and/or aided and abetted  Paley in his breach of fiduciary duties to IMED.

173.     IMED seeks an accounting of Paley and Orthex to reveal and ultimately recover from each of them the financial gains they wrongfully acquired by breaching the Consulting Agreement and committing the other wrongs alleged against them in this case.

174.     IMED is entitled to an accounting against Paley and Orthex because each owed fiduciary duties to IMED by contractually committing to a relationship of trust and confidence with IMED, owing duties of loyalty and disclosure to IMED under which they were obligated to account to IMED for their use of information confidentiality imparted to them, including Inventions made by them from such information.

## COUNT VI – SPECIFIC PERFORMANCE OF THE CONSULTING AGREEMENT
### (Against Paley and Orthex)

175.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 115 above as though fully stated herein.

176.     The Consulting Agreement was a valid contract existing between IMED, Paley and Dror Paley, LLC.

177.     The Consulting Agreement was executed on behalf of IMED by Tamer Isin.

178.      Paley executed the Consulting Agreement on behalf of himself and Dror Paley LLC.

179.     Even if not a party to the Consulting Agreement, Dror Paley, individually, was the sole legal representative of Dror Paley, LLC and is bound by at least paragraphs 5, 6, and 7 of the Consulting Agreement under paragraph 11 thereof.

180.    By reason of Paley's duties under paragraphs 5, 6 and 7 of the Consulting Agreement, the services he was to perform for IMED, his superior knowledge of the matters that he agreed to give advice on and IMED's dependence and reliance on same, Paley was in a relationship of trust and confidence with IMED, and thus IMED's fiduciary.

181.    Orthex, as a successor to Paley LLC, which, upon information and belief, Paley helped create while in a relationship of trust and confidence with IMED to engage in conduct which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's "heir," and is therefore, under paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof. By reason of Orthex' duties under paragraphs 5, 6 and 7 of the Consulting Agreement, Orthex was in a relationship of trust and confidence with IMED.

182.    Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable based on acts undertaken by Paley on behalf of Orthex, and/or aided and abetted  Paley in his breach of fiduciary duties to IMED.

183.    The '377 patent is an Invention under section 6.2 of the Consulting Agreement.

184.    The copyrighted computer software attributed to Paley and Abraham Lavi is an Invention under Section 6.2 of the Consulting Agreement and a work made for hire under Section 6.4 of the Consulting Agreement.

185.    Under Section 6.2 of the Consulting Agreement, Paley and Orthex remain duty bound to assign to IMED all Inventions, including 1) the '377 patent and any other patent and patent applications associated with the '377 patent and/or any other Invention and 2) all computer software attributed to Paley and Abraham Lavi, with associated copyrights.

186.    Under the terms of the Consulting Agreement, IMED is the owner of all right, title, and interest in the '377 patent.

187.    Under the terms of the Consulting Agreement, IMED is the owner of all right, title, and interest in the computer software and related copyrights attributed to Paley and Abraham Lavi.

188.    IMED therefore demands that Paley and Orthex be ordered to transfer to IMED, free and clear of all liens, ownership of all Inventions it improperly holds by reason of violation of the Consulting Agreement, including: 1) the '377 patent and any other patent and patent applications that claim priority to the application that lead to the '377 patent and/or any other Invention and 2) all computer software attributed to Paley and Abraham Lavi, with associated copyrights

## COUNT VII – CONSTRUCTIVE TRUST

189.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraph numbers 1 through 115 above as though fully restated herein.

190.    By reason of Paley's duties under paragraphs 5, 6 and 7 of the Consulting Agreement, the services he was to perform for IMED, his superior knowledge of the matters that he agreed to give advice on and IMED's dependence and reliance on same, Paley was in a relationship of trust and confidence with IMED, and thus IMED's fiduciary.

191.    Orthex, as a successor to Paley LLC, which, upon information and belief, Paley helped create while in a relationship of trust and confidence with IMED to engage in conduct which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's "heir," and is therefore, under paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof. By reason of Orthex' duties under paragraphs 5, 6 and 7 of the Consulting Agreement, Orthex was in a relationship of trust and confidence with IMED.

192.    Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable based on acts undertaken by Paley on behalf of Orthex, and/or aided and abetted Paley in his breach

of fiduciary duties to IMED.

193.     Under the non-disclosure and invention assignment provisions of the Consulting Agreement, Paley and Paley LLC entered a relationship of trust and confidentiality with IMED under which they were to refrain from self-dealing.  Specifically, Paley and Paley LLC were expressly prohibited from disclosing or using IMED's confidential and trade secret information for any purpose other than for IMED's benefit and to disclose and assign to IMED all of their worldwide rights, titles and interests to inventions, improvements, discoveries, processes, designs, technical information, know-how, data, specifications, Trade Secrets, patents, trademarks, copyrights, computer programs, and other proprietary information relating to the development, production, distribution and licensing of computer aided external fixator devices ("Inventions"), which they conceived, invented, or developed during the term of the Agreement, or with the use of the IMED's Trade Secrets, material, facilities, employees or advisors.

194.     Paley and Paley LLC breached the aforesaid obligations by concealing from IMED inventions, improvements, discoveries, processes, designs, technical information, know-how, data, specifications, Trade Secrets, patents, trademarks, copyrights, computer programs, and other proprietary information relating to the development, production, distribution and licensing of computer aided external fixator devices ("Inventions"), which they conceived, invented, or developed during the term of the Agreement, or with the use of the IMED's Trade Secrets, material, facilities, employees or advisors, including the inventions of the '377 patent and related divisional application and copyrighted software.

195.     Paley and Paley LLC further breached their duties of trust and confidentiality to IMED by secretly forming Orthex while consulting for IMED and assigning to Orthex the inventions of  the '377 patents and related patent applications knowing that they were to be

assigned and rightfully owned by IMED under the Consulting Agreement.

196.    Paley and Paley LLC further breached their duties of trust and confidentiality to IMED by applying for the '377 patent knowing that they were prohibited by the Consulting Agreement from doing so.

197.    Paley and Paley LLC further breached their duties of trust and confidentiality to IMED by concealing Paley's 2013 invention assignment to Orthex and causing Orthex to not record said assignment with the United States Patent Office until 2019 and by causing Orthex to request the United States Patent Office to not publish the '377 patent application while pending.

198.    By reason of Paley and Paley LLC's breach of trust and confidentiality to IMED, Orthex has now acquired title and ownership to the '377 patent and one or more related patent applications as well as software and attendant copyrights, which rightfully belong to IMED under the Consulting Agreement and which, if not returned to IMED by Orthex, will continue to result in an unjust enrichment to Orthex.  Equity requires that Orthex, by reason of the improper manner in which it acquired ownership and title to this property, be deemed to hold such property as a constructive trustee and assign and return such property to IMED as its rightful legal and beneficial owner.

**<u>COUNT VIII – DECLARATION THAT IMED OWNS THE '377 PATENT</u>**

199.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraph numbers 1 through 115 above as though fully restated herein.

200.    An actual dispute exists between IMED and Defendants Orthex, OrthoPediatrics, and Squadron as to the ownership of the '377 patent, patent and patent applications that claim priority to the application that lead to the '377 patent, and any related computer software.

201.    The Consulting Agreement was a valid contract existing between IMED, Paley and

Dror Paley, LLC.

202.    The Consulting Agreement was executed on behalf of IMED by Tamer Isin.

203.     Paley executed the Consulting Agreement on behalf of himself and Dror Paley LLC.

204.    Even if not a party to the Consulting Agreement, Dror Paley, individually, was the sole legal representative of Dror Paley, LLC and is bound by at least paragraphs 5, 6, and 7 of the Consulting Agreement under paragraph 11 thereof.

205.    By reason of Paley's duties under paragraphs 5, 6 and 7 of the Consulting Agreement, the services he was to perform for IMED, his superior knowledge of the matters that he agreed to give advice on and IMED's dependence and reliance on same, Paley was in a relationship of trust and confidence with IMED, and thus IMED's fiduciary.

206.    Orthex, as a successor to Paley LLC, which, upon information and belief, Paley helped create while in a relationship of trust and confidence with IMED to engage in conduct which Paley LLC could not undertake without violating the Consulting Agreement, is Paley LLC's "heir," and is therefore, under paragraph 11 of the Consulting Agreement, also bound by paragraphs 5, 6 and 7 thereof. By reason of Orthex' duties under paragraphs 5, 6 and 7 of the Consulting Agreement, Orthex was in a relationship of trust and confidence with IMED.

207.    Orthex is a successor in interest to Dror Paley, LLC and Orthex is vicariously liable based on acts undertaken by Paley on behalf of Orthex, and/or aided and abetted  Paley in his breach of fiduciary duties to IMED.

208.    The '377 patent is an Invention under section 6.2 of the Consulting Agreement.

209.    The copyrighted computer software attributed to Paley and Abraham Lavi is an Invention under Section 6.2 of the Consulting Agreement and a work made for hire under Section

39

6.4 of the Consulting Agreement.

210.    Under Section 6.2 of the Consulting Agreement, Paley and Orthex remain duty bound to assign to IMED all Inventions, including: 1) the '377 patent and any other patent and patent applications claiming priority to the '377 patent and/or any other Invention, and 2) all computer software attributed to Paley and Abraham Lavi, with associated copyrights.

211.    Under the terms of the Consulting Agreement, IMED is the owner of all right, title, and interest in the '377 patent.

212.    Under the terms of the Consulting Agreement, IMED is the owner of all right, title, and interest in the computer software and related copyrights attributed to Paley and Abraham Lavi.

### COUNT IX – DECLARATION OF INVALIDITY OF SQUADRON'S SECURITY INTEREST IN THE '377 PATENT AND RELATED PROPERTY

213.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraph numbers 1 through 115 above as though fully restated herein.

214.    An actual dispute exists between IMED and Squadron as to the validity and enforceability *vel non* of the '377 Patent, patent and patent applications that claim priority to the application that lead to the '377 Patent, and any related computer software or other associated intellectual property (collectively, "Subject Collateral").

215.    At the time Orthex purported to grant a security interest in favor of Squadron, Orthex did not have rights, or the power to transfer rights, in the Subject Collateral, as required under Uniform Commercial Code ("UCC") § 9-203(b)(2).

216.    Accordingly, the security interest claimed by Squadron in the Subject Collateral did not attach pursuant to UCC § 9-203(a) and is not enforceable against IMED pursuant to § 9-203(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment against the Defendants as follows:

A.  That the Court enter an Injunction preventing Orthex, OrthoPediatrics, and Squadron from conveying the '377 patent, or any patent application claiming priority to the patent application that led to the '377 patent, and any computer software associated with the subject matter claimed in the '377 patent until this matter is resolved;

B.  That the Court Declare IMED the rightful owner of the Inventions, free and clear of all liens, that Paley and Orthex are contractually obligated to convey to IMED under the Consulting Agreement, including: 1) the '377 patent and any patents or patent applications that claim priority or connection to the application that lead to the '377 patent and/or any other Invention and 2) all computer software attributed to Paley and Abraham Lavi, with associated copyrights;

C.  That the Court enter an Order directing Paley, Orthex, OrthoPediatrics, and Squadron to convey and assign to IMED all their right, title, and interest in all Inventions, free and clear of all liens, that Paley and Orthex are contractually obligated to convey to IMED under the Consulting Agreement, including: 1) the '377 patent and any patent or patent applications that claim priority or connection to the application that lead to the '377 patent and/or any other Invention and 2) all computer software attributed to Paley and Abraham Lavi, with associated copyrights;

D.  That the Court enter an Order requiring Paley and Orthex to pay IMED all

41

applicable compensatory, consequential and unjust enrichment damages arising from Paley's and Orthex' breach of the Consulting Agreement;

E.  That the Court enter an Order requiring Paley and Orthex to pay IMED all applicable compensatory, consequential and unjust enrichment damages arising from Paley's and Orthex' breach of fiduciary duties;

F.  That the Court enter an Order requiring Paley and Orthex to pay IMED all applicable compensatory, consequential and unjust enrichment damages arising from Paley's and Orthex' fraudulent concealment;

G.  That the Court enter an order requiring Paley and Orthex to pay IMED money damages in the amount by which Paley and Orthex have been unjustly enriched;

H.  That the Court enter an Order for an accounting against Paley and Orthex to uncover and recover all gains they wrongfully acquired by reason of the misconduct alleged against them herein;

I.  That the Court ender an Order imposing a constructive trust on Orthex, OrthoPediatrics, and Squadron to hold as constructive trustees for IMED, and to convey and assign to IMED, free and clear of all liens, all Inventions Orthex inequitably holds title and ownership to by reason of its own or Paley's wrongful conduct and which IMED rightfully owns or should own under the Consulting Agreement, including: 1) the '377 patent and any other patent and patent applications associated with the '377 patent and/or any other Invention, and 2) all computer software attributed to Paley and Abraham Lavi, with associated copyrights;

J.  That the Court declare that IMED is the owner of all right title and interest in the

'377 patent, patents and patent applications that claim priority to the application that lead to the '377 patent, and any computer software attributed to Paley and Abraham Lavi, with associated copyrights;

K.  That the Court declare Squadron's security interest in the '377 patent invalid and unenforceable; and

L.  That the Court grant such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

 _/s/_ Jeffrey D. Feldman
Jeffrey D. Feldman

TRAILBLAZER
Florida Bar No.: 330302
1200 Brickell Avenue
Penthouse 1900
Miami, Florida 33131
Tel.: 305-222-7852
JFeldman@TrailblazerLaw.com

OFFIT KURMAN, P.A.

 _/s/_ Michael P. Hogan
Michael P. Hogan (PA 313402)
*(pro hac vice* application to be filed)
Ten Penn Center
Suite 2300
Philadelphia, Pennsylvania 19103
(267) 338-1300
michael.hogan@offitkurman.com

*Attorneys for Defendants*